IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES EDWARD BARBER,<br><br>Defendant. | Case No. 3:19-cr-00093-TMB<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT** |

## I. INTRODUCTION

This matter came before the Court for bench trial, which commenced and ended on September 3, 2020.[1] The United States of America charged Defendant James Edward Barber with one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[2] At the conclusion of the trial, the Court took the matter under advisement for deliberation and decision. Having heard and carefully considered all of the evidence and argument presented at trial, and all briefings and stipulations, and in accordance with Federal Rule of Criminal Procedure 23(c), the Court now renders its verdict.

## II. PROCEDURAL HISTORY

This criminal action stems from a traffic stop and subsequent vehicle search on July 21, 2019, in the District of Alaska.[3] A .22 caliber rifle and .22 caliber ammunition were

---

[1] Dkt. 286 (Minute Entry).

[2] Dkt. 109 (Superseding Indictment).

[3] Dkt. 1 (Complaint).

discovered during the traffic stop and Defendant was subsequently arrested.[4] On August 8, 2019, while Defendant was detained pretrial, three boxes of .22 caliber ammunition were discovered in plain view in his residence in the District of Alaska.[5] As a result, a federal grand jury returned a two-count Indictment against the Defendant.[6] The Indictment alleges as to Count 1: "On or about July 21, 2019, within the District of Alaska, the defendant, JAMES EDWARD BARBER, knowingly having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, to wit, one Marlin Firearms Company, model 915YS, .22 caliber rifle," in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[7] Count 2 alleges: "Beginning on or about a date unknown to the Grand Jury, and ending on or about July 27, 2019, within the District of Alaska, the defendant, JAMES EDWARD BARBER, knowingly having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate and foreign commerce, ammunition, to wit, .22 caliber ammunition."[8]

On September 27, 2019, the Defendant filed a Motion to Suppress, arguing that the warrantless stop and subsequent search of his vehicle and person violated his constitutional rights.[9] After the United States filed its Response in Opposition,[10] an evidentiary hearing was held before

---

[4] *Id.*

[5] Dkt. 10 (Pretrial Services Report).

[6] Dkt. 17 (Indictment).

[7] *Id*. at 2

[8] *Id*. at 3

[9] Dkt. 27 (Motion to Suppress).

[10] Dkts. 31 (Response); 32 (Amended Response).

United States Magistrate Judge Matthew Scoble on October 22, 2019.[11] On January 15, 2020, the Court entered an Order adopting the Magistrate Judge's Report and Recommendation, and granting in part and denying in part Defendant's Motion to Suppress.[12] Specifically, the Court found the search of Defendant's vehicle to be illegal.[13] However, the Court denied suppression of the ammunition seized at Defendant's residence.[14]

On February 21, 2020, a federal grand jury returned a Superseding Indictment, which charges Defendant with a single count of Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[15] The Superseding Indictment alleges: "Beginning on or about a date unknown to the Grand Jury, but not later than July 21, 2019, and ending on or about August 9, 2019, within the District of Alaska, the defendant, JAMES EDWARD BARBER, knowingly having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate and foreign commerce, ammunition, to wit, .22 caliber ammunition."[16]

Defendant waived his right to trial by jury in writing on August 31, 2020.[17] The Government consented and the Court approved the same as required by Rule 23 of the Federal

---

[11] Dkt. 45 (Minute Entry).

[12] Dkt. 69 (Order).

[13] *Id.* at 2.

[14] *Id.*

[15] Dkt. 109.

[16] *Id.* at 2.

[17] Dkt. 280 (Waiver).

Rules of Criminal Procedure, allowing the case to be tried by the Court.[18] A one-day bench trial commenced on September 3, 2020.[19]

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to 18 U.S.C. § 922(g)(1), "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate for foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." For Defendant to be found guilty of Felon in Possession of Ammunition under Section 922(g)(1), the United States must prove four elements beyond a reasonable doubt:

(1) the Defendant knowingly possessed .22 caliber ammunition;

(2) the .22 caliber ammunition had been shipped or transported from outside of the State of Alaska;

(3) at the time the Defendant possessed the .22 caliber ammunition, the Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

(4) at the time the Defendant possessed the .22 caliber ammunition, the Defendant knew that he had been convicted of such crime.[20]

In advance of trial, the Defendant stipulated to the second, third, and fourth elements.[21]

---

[18] *Id.*

[19] Dkt. 109.

[20] *See Rehaif v. United States*, __ U.S. ___, 139 S. Ct. 2191, 2194 (2019); *United States v. Benamor*, 937 F.3d 1182, 1186 (9th Cir. 2019); Ninth Circuit Model Inst. 8.65A (2019).

[21] Dkts. 107 (Stipulation); *see* Dkt. 283 at 3 (Supplement).

4

Therefore, the only element at issue before the Court is whether Defendant knowingly possessed the three boxes of .22 caliber ammunition found in his residence.[22]

At trial, the United States presented evidence and witness testimony that focused on the discovery of the ammunition at Defendant's residence. First, the United States called United States Probation Officer Yang Moua, who conducted the pretrial inspection of Defendant's residence and observed the three boxes of ammunition in plain view on a shelf in the hallway. Officer Moua also testified to the pretrial release forms on which Defendant states he lived alone. Then, the United States called Defendant's employer, attorney Christopher Hoke, who testified to his relationship with Defendant and his involvement in this case as Defendant's third-party custodian. Mr. Hoke described his visits to Defendant's residence, including the pretrial inspection with Officer Moua, during which the ammunition was discovered. Next, the United States called a Facebook records custodian in order to authenticate and admit excerpts from a Facebook account associated with Defendant. The United States also called United States Forest Service Officer Dale Linton. Officer Linton conducted the traffic stop and arrest of Defendant on July 21, 2019. Finally, the United States called Special Agent Sarah Foreman of the Bureau of Alcohol, Tobacco, Firearms and Explosives to testify to additional Facebook evidence and the functionality of the .22 caliber rifle.

In a short defense case, Defendant called a single witness, Daudi Foster. Mr. Foster resides in an adjacent apartment building owned and leased out by the same owner of Defendant's residence. Mr. Foster serves as the properties' de facto manager by maintaining the properties, regulating visitors and unauthorized activities, and occasionally collecting rent from tenants.

---

[22] The Court applies the Ninth Circuit Model Criminal Jury Instruction 3.15 definition of possession.

Mr. Foster testified as to the neighborhood, property conditions, and his knowledge and experience as the property manager, both generally and with specific observations relevant to this case.

In consideration of all the evidence, the Court finds that the United States' theory and evidence fail for several reasons to establish guilt beyond a reasonable doubt that Defendant knowingly possessed the .22 ammunition discovered in his residence during the respective time period.[23]

There is no direct evidence that Defendant knowingly possessed the .22 caliber ammunition recovered from his residence. The United States relies on the simple fact that Defendant resided alone in the apartment to draw the conclusion that it was Defendant's ammunition. However, additional facts in the evidence create reasonable doubt that Defendant maintained exclusive control of the residence or its contents. The ammunition was discovered in the residence on August 8, 2019. At that time, Defendant had not been in the residence for approximately two weeks because he was in pretrial detention and the residence was in disrepair. Witnesses testified to the trash littered throughout the rooms, a boarded-up window, and a large, front window that had completely shattered open. For an indeterminate amount of time, the front door of the residence was unlocked and the shattered front window provided unfettered access for anyone seeking to enter the residence. There is undisputed evidence that at least one other person indeed accessed the residence prior to August 8, 2019, during Defendant's absence. Mr. Foster also testified that he has had to remove squatters from vacant apartments on the properties approximately 25 times in the past. Nothing in the evidence suggests a date when the ammunition was acquired and placed in the residence or the person who acquired and placed the ammunition in the residence. The

---

[23] *See* Dkt. 109 at 2.

United States did not provide any evidence to rebut the notion that the ammunition could have belonged to someone other than Defendant. Therefore, there is no direct evidence connecting Defendant to the ammunition or negating the possibility that Defendant did not know about the ammunition.

In addition, Defendant's Facebook messages that were admitted by the United States, while probative, are nonetheless ambiguous. In January 2020, Defendant exchanged several messages with another Facebook user concerning this case. Specifically, Defendant stated on one occasion, "I got lucky that they didn't find any dope with the gun or the ammo. I do better house keeping than most so there is that'll." On another occasion, Defendant stated, "Tera told my friends she thought I was banging some chick in anchorage . . . I think she may have busted my window and left my door open which may have helped me beat my ammunition charge lol." The United States argues that Defendant was referring to the ammunition found in his residence and "delighting" in a possible defense theory. However, the Court disagrees, as there are other, reasonable interpretations of the messages. For example, it is unclear in the first message whether Defendant was referencing the ammunition discovered in conjunction with the suppressed rifle from the traffic stop. As to the second message, Defendant appears to be analyzing possible legal defenses—relatedly, Mr. Hoke employs Defendant to assist in criminal appellate work and testified that Defendant is familiar with legal analysis. Ultimately, these messages were sent months after Defendant had been charged; the messages accept the undisputed fact that ammunition was recovered from his residence yet imply no ownership or possession over the ammunition. Again, the evidence fails to establish Defendant's knowledge of the ammunition during the time period as charged.

Finally, the United States was permitted to reference the .22 caliber rifle seized from the

7

Case 3:19-cr-00093-TMB-MMS   Document 291   Filed 09/04/20   Page 7 of 8

July 21, 2019, traffic stop solely for the "purposes of identity and knowledge" under Federal Rule of Evidence 404(b).[24] To be clear, during trial, the Court cautioned and clarified with the United States the limits and applicability of the .22 caliber rifle in this case and, in rendering this decision, the Court has not considered the .22 caliber rifle for any other purpose. Even so, the Court is not persuaded that Defendant's knowledge of a .22 caliber rifle imputes knowledge of .22 caliber ammunition, especially when the discovery of the rifle and ammunition are distinct events, separated in time and physical distance. The United States invoked Occam's razor to argue Defendant knowingly possessed ammunition that fit the rifle. This simple explanation does not meet the standard of beyond a reasonable doubt.

Having considered the totality of the evidence and the Parties' arguments, the Court finds that the United States did not prove beyond a reasonable doubt that Defendant knowingly possessed the three boxes of .22 ammunition, as charged in the Superseding Indictment.

## IV. VERDICT

Accordingly, for the reasons set forth herein, the Court finds Defendant James Edward Barber **NOT GUILTY** of Count One of the Superseding Indictment.[25]

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 4th day of September, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[24] Dkt. 69 at 4.

[25] Dkt. 109.